UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION


DORTHELIA WHITMORE,         )
                                     )
                  Plaintiff,       )
                                     )
              v.               )       No.  4:14CV762 NAB
                                   )
CAROLYN W. COLVIN, Acting     )
Commissioner of Social Security,    )
                                   )
               Defendant.   )


## MEMORANDUM AND ORDER

Plaintiff Dorthelia Whitmore brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the Commissioner's final decision denying her application for supplemental security income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.*  All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).  Because the Commissioner's final decision is supported by substantial evidence on the record as a whole, it is affirmed.

## I.  Procedural History

Plaintiff applied for SSI on January 27, 2011, claiming disability because of heart failure, bypass surgery, and hypertension.  She alleges a disability onset date

of January 26, 2011.  The Social Security Administration initially denied plaintiff's application on July 7, 2011.  After a hearing on November 20, 2012, at which plaintiff and a vocational expert testified, an administrative law judge (ALJ) entered a written decision on January 18, 2013, finding plaintiff not disabled because of her ability to perform work as it exists in significant numbers in the national economy.  On February 20, 2014, the Appeals Council denied plaintiff's request to review the ALJ's adverse decision.  The ALJ's decision thus became the final decision of the Commissioner.  42 U.S.C. § 405(g).

Plaintiff now requests this Court to review the ALJ's decision, arguing that the medical evidence of record establishes that she is disabled because of her heart bypass surgery and her continuing symptoms of chest pain and shortness of breath. Plaintiff also contends that she is limited by swelling and tightness in her hands and feet caused by arthritis, and that she cannot stand for long periods of time because of restless leg syndrome.  Plaintiff also argues that the ALJ considered only the objective medical evidence of record and failed to consider her subjective complaints of disabling symptoms.  Plaintiff proceeds in this cause *pro se* and has filed memoranda with the Court setting out her claims.  (*See* Pltf.'s Memos. to Court, Doc. Nos. 17, 19.)  Upon review of the record as a whole, the Court finds the ALJ's decision to be supported by substantial evidence.  The final decision of the Commissioner finding plaintiff not disabled is therefore affirmed.

## II. Testimonial Evidence Before the ALJ

A.    Plaintiff's Testimony

At the hearing on November 20, 2012, plaintiff testified in response to questions posed by the ALJ and counsel.

At the time of the hearing, plaintiff was forty-seven years of age. Plaintiff is married and lives in an apartment with her husband. She stands five feet, four inches tall and weighs 185 pounds. Plaintiff went to school through the eleventh grade. She has not earned her GED. (Tr. 26, 35.)

Plaintiff's Work History Report shows that plaintiff worked intermittently as a nurse's assistant from 1997 to August 9, 2010. (Tr. 140.) Plaintiff testified that she was certified as a nurse's assistant in 1999. (Tr. 37.)

Plaintiff testified that she underwent heart bypass surgery in January 2011 and experienced chest pain and pneumonia thereafter. Plaintiff testified that she cannot work because of the residual effects of her bypass surgery, including tenderness in the chest and shortness of breath, as well as because of swelling in her feet and hands. Plaintiff testified that she also has asthma, chronic obstructive pulmonary disease, "a little fluid in the heart," high cholesterol, and hypertension, as well as rheumatoid arthritis in her right hand that causes swelling. Plaintiff has not yet seen a doctor for her arthritis condition. Plaintiff testified that some of her medications make her go to sleep or feel hot. (Tr. 27-30, 32-33.)

Plaintiff testified that tenderness in her ribcage and the swelling in her feet and ankles limit her to sitting no longer than twenty minutes, walking about thirty minutes, and standing for fifteen minutes.  Plaintiff testified that she must move around a lot or elevate her legs while sitting because of the swelling.  Plaintiff testified that she experiences chest tightness when she tries to walk one block and must stop five or six times to take a deep breath or use her inhaler.  (Tr. 29-32.)

As to her daily activities, plaintiff testified that she gets up in the morning and tries to make the bed with help from her husband.  Plaintiff cleans the kitchen if it needs cleaning, but she basically relaxes during the day.  She reads the bible and watches television.  Her grandchildren sometimes come to visit.  Plaintiff testified that her husband helps a lot with certain things, including helping her into and out of the tub.  (Tr. 34-36.)  She can no longer do laundry by herself because she cannot lift or go up and down steps a lot.  Plaintiff can stand and cook or do dishes but must sit and rest a bit while doing so.  (Tr. 29.)  Plaintiff does the majority of the cooking.  Plaintiff testified that both she and her husband do the shopping.  Plaintiff has difficulty sleeping because of discomfort in her chest.  She sleeps only about three hours at night.  (Tr. 34-36.)

B.     Testimony of Vocational Expert

Dr. Belchick, a vocational expert, testified at the hearing in response to questions posed by the ALJ.

The ALJ advised Dr. Belchick that the only work performed by plaintiff that qualified as substantial gainful activity was that done prior to her obtaining certification as a nurse's assistant. Dr. Belchick characterized such work as that of a home health aide and described it as medium and unskilled work. (Tr. 37-38.)

The ALJ asked Dr. Belchick to assume an individual forty-five years of age with eleven years of education and past work as a home health aide. The ALJ asked Dr. Belchick to further assume that this individual could

> lift and carry 20 pounds occasionally, 10 pounds frequently; can stand or walk for two hours out of eight and sit for six; can occasionally climb stairs and ramps, never ropes, ladders, or scaffolds; occasionally stoop, kneel, crouch, and crawl. She should avoid concentrated exposure to extreme cold and heat, wetness and humidity, and vibration. And she should avoid even moderate exposure to fumes, odors, dusts, and gases, and all exposure to unprotected heights and moving and dangerous machinery.

(Tr. 38.) Dr. Belchick testified that such a person could not perform plaintiff's past relevant work but could perform other work as a bench assembler, of which 1,700 such jobs exist in St. Louis and 60,000 nationally; and as a packager, of which 1,200 such jobs exist in St. Louis and 14,000 nationally. (Tr. 40.)

The ALJ then asked Dr. Belchick to assume the same individual but that she required a sit/stand option in order to vary positions once every half an hour. Dr. Belchick responded that such a person could perform work as a cashier-II, of which 11,000 such jobs exist in St. Louis and 100,000 nationally. (Tr. 40-42.)

### III. Medical Records Before the ALJ

The medical evidence of record shows that plaintiff was treated at Christian Hospital and Grace Hill Neighborhood Health Services/Murphy-O'Fallon Clinic beginning in June 2010 for complaints of shortness of breath and chest pain. Pulmonary function tests yielded fairly unremarkable findings. Dr. Bharat Shah, a cardiologist, determined in July 2010 that plaintiff had pericardial effusion,[1] and plaintiff was treated with Lasix, potassium, prednisone, and Tramadol. Plaintiff was also determined to have hypertension, for which medication was prescribed. Plaintiff also received treatment for asthma.

In November 2010, plaintiff visited her primary care physician, Dr. David Richards, at Grace Hill/Murphy-O'Fallon Clinic and reported that she was unable to afford Dr. Shah's care as well as some of her prescribed medications. Dr. Richards noted plaintiff to have shortness of breath with minimal exertion as well as difficulty breathing while lying down (orthopnea). Plaintiff also reported that she was experiencing some swelling in her ankles and hands, but Dr. Richards' physical examination showed no swelling. Indeed, physical examination was normal in all respects. Dr. Richards determined plaintiff's congestive heart failure and hypertension to be poorly controlled, and medication was prescribed. Dr.

---

[1] Pericardial effusion is the buildup of fluid in the pericardium, the sac that surrounds the heart. *Medline Plus* (last updated Aug. 1, 2014)<http://www.nlm.nih.gov/medlineplus/pericardialdisorders.html>.

Richards also prescribed medication for hyperlipidemia and asthma, as well as Tylenol for hand pain associated with swelling. Plaintiff was referred to cardiology at ConnectCare for evaluation and treatment. (Tr. 195-98.)

Plaintiff was admitted to Christian Hospital on January 9, 2011, for cardiology consultation given her complaints of chest pressure with walking or exertion, and shortness of breath. A cardiac catheterization showed 80% ostial stenosis of the left main coronary artery, which was determined to be critical, and plaintiff underwent double bypass surgery on January 13. Dr. Nabil Munfakh performed the surgery. Plaintiff was discharged from the hospital on January 18 and was diagnosed with coronary artery disease (CAD), status post coronary artery bypass graft with left main stenosis; chronic obstructive pulmonary disease (COPD); excessive alcohol consumption; hypertension; and probable trachea-bronchitis. Plaintiff's discharge medications included Advair, aspirin, Carvedilol (Coreg), Lasix, Levaquin, potassium, Tylenol, Proventil, and oxycodone. Plaintiff was instructed to increase her activity as tolerated. (Tr. 225-26.)

Plaintiff followed up with Dr. Munfakh in February and April 2011 who noted plaintiff to be doing well. Plaintiff was instructed to increase her activity level. No swelling was noted about plaintiff's extremities during these examinations. Although plaintiff complained of severe left-sided chest pain in April, Dr. Munfakh determined it to be a sprain and nothing serious. He instructed

plaintiff to take anti-inflammatory medication.  (Tr. 335, 336.)

Plaintiff underwent a consultative physical examination on June 13, 2011, for disability determinations.  Plaintiff complained to Dr. A. Rashid Qureshi that she experienced shortness of breath, chest pain and tightness, orthopnea, and swelling in both legs.  Plaintiff also reported that she had rheumatoid arthritis affecting her ankles and both hands.  Plaintiff reported that she could not perform sustained work for eight hours because sitting, standing, lifting, or carrying caused her symptoms.  Dr. Qureshi's physical examination showed evidence of grade I arteriosclerotic changes at the fundi, bilateral rales and rhonchi in the lungs, and systolic murmur with S3 gallop.  Range of motion examination showed that plaintiff had difficulty with dorsiflexion, palmar flexion, and ulnar and radial deviation with both hands.  Plaintiff had decreased grip strength and could not fully extend her hands, make a fist, or oppose her fingers.  Plaintiff was also noted to have problems with flexion of the spine.  Muscle weakness was noted about the lower extremities, bilaterally, and plaintiff had limited strength about the upper extremities.  Dorsiflexion and plantar flexion was also reduced about the ankles, bilaterally.  Dr. Qureshi noted plaintiff's effort to be "fair" throughout the range of motion examination.  (Tr. 319-20, 323-24.)  Dr. Qureshi diagnosed plaintiff with atherosclerotic heart disease, status post coronary artery bypass surgery; congestive heart failure, functional class II-III; uterine fibroid; and rheumatoid arthritis; and

generally opined that plaintiff was unable to sit, lift, or carry.  (Tr. 321, 325.)

During her follow up examination with Dr. Munfakh on June 14, plaintiff complained that her incisional site was tender, and Dr. Munfakh noted plaintiff to have a hypersensitive painful reaction along the sternal incision.  Dr. Munfakh opined that nothing much could be done and suggested the possibility of taking Tegretol or referral to a pain specialist, but plaintiff decided to wait and see if the pain improved over time.  (Tr. 337.)

Plaintiff visited Dr. Richards at Grace Hill/Murphy-O'Fallon Clinic on June 24 and reported having tenderness about the incisional site.[2]  Plaintiff reported that she had no chest pain, shortness of breath, fatigue, or swelling, and physical examination was normal in all respects except for notable tenderness about the incisional scar.  Dr. Richards considered plaintiff's congestive heart failure to be stable.  Plaintiff continued to report that financial issues affected her ability to take her medications regularly.  Dr. Richards prescribed Tramadol for incisional pain as well as other medications for asthma, CAD, congestive heart failure, and hypertension.  Plaintiff was given all of her medications at no cost.  (Tr. 473-76.)

On July 7, 2011, Dr. Nancy Ceaser, a medical consultant with disability determinations, reviewed the evidence of record relating to plaintiff's treatment

---

[2] Dr. Richards noted that he last saw plaintiff in December 2010.

both before and after plaintiff's heart bypass surgery, as well as evidence from plaintiff's consultative examination with Dr. Qureshi. Based upon her review of the evidence, Dr. Ceaser completed a Physical Residual Functional Capacity (RFC) Assessment in which she opined that plaintiff could lift twenty pounds occasionally and ten pounds frequently, stand and/or walk for a total of at least two hours in an eight-hour workday, sit for a total of about six hours in an eight-hour workday, and was unlimited in her ability to push or pull. Dr. Ceaser further opined that plaintiff could frequently balance and occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs but should never climb ladders, ropes, or scaffolds. With respect to environmental limitations, Dr. Ceaser opined that plaintiff should avoid all exposure to hazards and avoid moderate exposure to fumes, odors, dusts, gases, and poor ventilation. Dr. Ceaser further opined that plaintiff should avoid concentrated exposure to extreme cold and heat, wetness, humidity, and vibration. Dr. Ceaser opined that plaintiff had no manipulative, visual, or communicative limitations. (Tr. 326-32.)

During her follow up appointment with Dr. Munfakh in September 2011, plaintiff continued to complain of incisional pain, but Dr. Munfakh noted there to be no evidence of angina. Dr. Munfakh determined plaintiff to be okay from a cardiac standpoint and noted that he would release plaintiff from his care in six months upon review of the results of a cardiac stress test. (Tr. 338.)

In September and October 2011, plaintiff was admitted to Christian Hospital on three occasions for treatment of acute bronchitis, pneumonia, and gastritis associated with her complaints of arm and chest pain and chest pressure. Physical examinations and diagnostic tests during these admissions showed no evidence of cardiac disease, including no evidence of pericardial effusion. Plaintiff had no complaints of shortness of breath. Nor was there evidence of pain or swelling about the joints or muscles, and plaintiff had normal range of motion about the extremities. (Tr. 347-62, 369-76, 386-88, 402-03.)

Plaintiff followed up with Dr. Munfakh in March 2012, who noted the results of a recent stress test to show ejection fraction at 55% with no myocardial effusion defects. Dr. Munfakh determined that plaintiff had recovered fully from her surgery and had done well. Although plaintiff reported continued tenderness along her incision, she reported having no angina or shortness of breath, and physical examination was normal in all respects with no peripheral swelling noted. (Tr. 339, 405.) This was plaintiff's last appointment with Dr. Munfakh.

Plaintiff had two emergency room visits at Christian Hospital in March and June 2012 for hand and wrist pain after experiencing falls. Although swelling and bruising associated with the injuries was noted, examinations showed full range of motion and no other swelling. During the March visit, it was determined that plaintiff had a fractured finger on the right hand, and a splint was applied. A splint

was likewise applied to the left wrist during the June visit for treatment of a hairline fracture. Relevant x-rays taken in March showed degenerative change in the first carpometacarpal joint of the left wrist–considered to be osteoarthritis, and mild degenerative change of the right wrist. (Tr. 407-24, 442-51.)

Plaintiff visited Dr. Richards on August 16, 2012, with complaints of occasional chest pain and shortness of breath with climbing stairs or walking two flat city blocks. Plaintiff reported having no tiredness, fatigue, or swelling. Dr. Richards noted plaintiff to have insomnia-related complaints – including snoring, gasping during sleep, and difficulty initiating and maintaining sleep – and suspected that she had obstructive sleep apnea. Plaintiff reported that she had no trouble with activities of daily living. Upon examination, Dr. Richards determined plaintiff's asthma to be stable and her hypertension not well controlled. Plaintiff's medications were adjusted. Dr. Richards referred plaintiff to cardiology at ConnectCare for evaluation and treatment of chest pain. (Tr. 483-86.)

Plaintiff went to the emergency room at Christian Hospital on August 18, 2012, with complaints of lightheadedness and chest pain and reports of feeling generally tired, fatigued with poor energy, and mild shortness of breath. Diagnostic tests showed no congestive heart failure or cardiomegaly, and no further cardiac evaluation was necessary. Plaintiff's chest pain was determined to be musculoskeletal in nature. Plaintiff's sinus bradycardia and lightheadedness

were determined to be related to plaintiff's medication dosages. Plaintiff was instructed to resume conservative treatment with a routine exercise program, weight reduction, and good control of hypertension and hyperlipidemia. (Tr. 454-58, 463.)

Plaintiff followed up with Dr. Richards on August 28 and reported no longer being fatigued. Physical examination was unremarkable, and no swelling was noted about the extremities. Upon review of the hospital's directives, Dr. Richards adjusted plaintiff's medications. (Tr. 487-88.)

No other records of medical treatment appear in the record.

## IV. The ALJ's Decision

The ALJ found that plaintiff had not engaged in substantial gainful activity since January 26, 2011. The ALJ found plaintiff's coronary artery disease, residuals of bypass surgery, obesity, and asthma to be severe impairments, but that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 11.) The ALJ determined that plaintiff had the RFC to perform sedentary work

> except stand and/or walk for two hours in an eight-hour workday; sit for at least six hours out of eight; occasionally climb ramps and stairs but never ladders, ropes and scaffolds; occasionally stoop, kneel, crouch and crawl; with no concentrated exposure to extreme cold, extreme heat, wetness, humidity and vibration; avoid even moderate

exposure to pulmonary irritants such as fumes, odors, dusts and gases;
and, no exposure to hazards (such as unprotected heights and moving
and dangerous machinery).

(Tr. 12.)  The ALJ found plaintiff unable to perform her past relevant work.  Upon

consideration of plaintiff's age, education, work experience, and RFC, the ALJ

determined that vocational expert testimony supported a finding that plaintiff could

perform other work as it exists in significant numbers in the national economy, and

specifically, bench assembler and packager.  The ALJ thus found that plaintiff had

not been under a disability since January 26, 2011.  (Tr. 18-19.)

## V.  Discussion

To be considered disabled and entitled to receipt of SSI under the Social

Security Act, plaintiff must be unable to engage in any substantial gainful activity

by reason of a medically determinable physical or mental impairment(s) "which

can be expected to result in death or which has lasted or can be expected to last for

a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A).

Plaintiff's physical or mental impairment(s) must be of such severity that she is not

only unable to do her previous work but cannot, considering her age, education,

and work experience, engage in any other kind of substantial gainful work which

exists in the national economy.  42 U.S.C. § 1382c(a)(3)(B).  Plaintiff bears the

burden to prove that she is disabled.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217

(8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992).

The Commissioner engages in a five-step evaluation process to determine disability. *See* 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If the claimant is working, disability benefits are denied. At Step 2, the Commissioner decides whether the claimant has a severe medically determinable impairment or combination of impairments, meaning that which significantly limits her ability to do basic work activities. If the claimant's impairment(s) is not severe, then she is not disabled. If the impairment(s) is severe, the Commissioner then determines at Step 3 whether such impairment(s) is equivalent to one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. If claimant's impairment(s) meets or equals one of the listed impairments, she is conclusively disabled. At Step 4, the Commissioner assesses the claimant's RFC, that is, the most she can do despite her impairments, and determines whether the claimant's RFC prevents her from performing her past relevant work. If the claimant can perform such work, she is not disabled. Finally, if the claimant is unable to perform her past work, the Commissioner continues to Step 5 and evaluates the claimant's RFC with various vocational factors to determine whether the claimant is capable of performing any other work in the

economy.  The claimant is entitled to disability benefits only if she is not able to perform other work.

The Commissioner's final decision must be affirmed if it is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).  Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion.  *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).  This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings."  *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted).  "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis."  *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1.    The credibility findings made by the ALJ.

2.    The plaintiff's vocational factors.

3.    The medical evidence from treating and consulting physicians.

4.    The plaintiff's subjective complaints relating to exertional and

non-exertional activities and impairments.

5.    Any corroboration by third parties of the plaintiff's impairments.

6.    The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted).  The Court must also consider any evidence which fairly detracts from the Commissioner's decision.  *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999).  "If, after reviewing the entire record, it is possible to draw two inconsistent positions, and the Commissioner has adopted one of those positions," the Commissioner's decision must be affirmed.  *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012).  The decision may not be reversed merely because substantial evidence could also support a contrary outcome.  *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

For the following reasons, substantial evidence on the record as a whole supports the ALJ's decision.

A finding of disability can be based only on medically determinable impairments.  These impairments "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques" and "must be established by medical

evidence consisting of signs, symptoms, and laboratory findings[.]" 20 C.F.R. § 416.908. Only evidence from acceptable medical sources can establish the existence of a medically determinable impairment. 20 C.F.R. § 416.913(a). A claimant's statements of symptoms alone cannot constitute a basis upon which to find the existence of an impairment. *See* 20 C.F.R. §§ 416.908, 416.928(a). The claimant bears the burden of providing medical evidence to the Commissioner establishing the existence of medically determinable impairment(s). 20 C.F.R. § 416.912.

In her filings with the Court, plaintiff contends that she is disabled, in part, because of restless leg syndrome and because of swelling and tightness in her hands and feet caused by arthritis. (*See* Pltf.'s Memos. to Court, Doc. Nos. 17, 19.) The evidence of record, however, does not establish these conditions to be medically determinable impairments. Plaintiff did not allege in her application for benefits that she was disabled because of either arthritis or restless leg syndrome. Nor do diagnoses of these impairments based on credible clinical and laboratory diagnostic techniques exist in the record.

To the extent consulting physician Dr. Qureshi reported his impression that plaintiff had rheumatoid arthritis, a review of his report shows this impression to be based upon plaintiff's subjective claim that she had rheumatoid arthritis and not upon any diagnostic imaging or laboratory testing. Although Dr. Qureshi observed

plaintiff to have limited range of motion, the ALJ properly noted that no objective evidence explains this globally decreased range of motion and, indeed, Dr. Qureshi observed plaintiff to put forth only fair effort during the range of motion exam. Further, a review of the record in its entirety shows plaintiff to have had full range of motion with every other physical examination, including specific examinations for wrist and hand injuries after falling. An ALJ does not err in discounting a physician's opinion when it is based on the claimant's subjective reports and not on a confirmed impairment and is inconsistent with other substantial evidence of record. *Renstrom v. Astrue*, 680 F.3d 1057, 1064 (8th Cir. 2012); *Teague v. Astrue*, 638 F.3d 611, 616 (8th Cir. 2011); *Goff v. Barnhart*, 421 F.3d 785, 790-91 (8th Cir. 2005).

In addition, further review of the record shows that – with the exception of plaintiff's hand injuries caused by falls – treating and examining physicians made repeated physical findings during examinations that plaintiff exhibited no swelling in her extremities. Plaintiff's claimed symptoms of swelling and tightness with arthritis simply enjoy no support in the record. Statements of symptoms alone cannot constitute a basis upon which to find the existence of an impairment. *See* 20 C.F.R. §§ 416.908, 416.928(a).

The same holds true for plaintiff's claimed impairment of restless leg syndrome. Other than in plaintiff's memoranda to this Court, the record is devoid

of any mention of restless leg syndrome, whether through objective medical findings or subjective complaints of symptoms.

Accordingly, because the medical evidence fails to establish arthritis or restless leg syndrome as medically determinable impairments, the ALJ did not err in failing to consider these conditions as bases for disability.

To the extent plaintiff claims that her bypass surgery and continued symptoms of chest pain and shortness of breath render her disabled, the ALJ properly noted the evidence of record to show that plaintiff's surgery was fully successful and resulted in no further cardiac issues. In addition, the ALJ noted that plaintiff's reported symptoms of chest pain and shortness of breath were non-cardiac in nature, attributable to acute conditions such as pneumonia and gastritis or related to medication effects, and resolved with treatment and adjustments to medication. "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." *Wildman v. Astrue,* 596 F.3d 959, 965 (8th Cir. 2010). *See also Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (impairments that are controllable or amenable to treatment do not support finding of total disability).

Finally, plaintiff contends that the ALJ considered only the objective medical evidence of record and not her subjective complaints when determining her claim for disability. Because of the subjective nature of some symptoms, such

as pain and shortness of breath, and the absence of any reliable techniques to measure them, an ALJ may not rely only on the absence of an objective medical basis to discount the severity of such subjective symptoms. *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted); *see also Renstrom*, 680 F.3d at 1066. Instead, the ALJ must consider all evidence relating to the claimant's subjective complaints of disabling symptoms, including the claimant's prior work record and third party observations as to the claimant's daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and any functional restrictions. *Polaski,* 739 F.2d at 1322 . When rejecting a claimant's subjective complaints, the ALJ must make an express credibility determination detailing his reasons for discrediting the testimony. *Renstrom,* 680 F.3d at 1066; *Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir. 1991). Where an ALJ explicitly considers the *Polaski* factors but then discredits a claimant's complaints for good reason, the decision should be upheld. *Hogan v. Apfel,* 239 F.3d 958, 962 (8th Cir. 2001). The determination of a claimant's credibility is for the Commissioner, and not the Court, to make. *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005); *Pearsall*, 274 F.3d at 1218.

Here, in conjunction with consideration of the medical evidence of record in determining plaintiff's claim for disability, the ALJ also evaluated the credibility

of plaintiff's subjective complaints based on the factors set out in *Polaski*. A review of the ALJ's decision shows him to have thoroughly reviewed all the evidence of record and to have identified inconsistencies from which he determined plaintiff's subjective complaints not to be entirely credible. For the following reasons, the ALJ did not err in this determination.

First, as discussed above, the ALJ noted that objective medical evidence did not support the severity of plaintiff's complaints as they related to her medically determinable impairments and, further, that no treatment records showed any physician to have placed restrictions on plaintiff's activities. *See Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (complaints not entirely credible where treating physician placed no restrictions on claimant despite alleged severity of symptoms); *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994) (absence of objective medical evidence supporting allegations of pain is one factor the ALJ is required to consider). The ALJ also noted that plaintiff sought treatment on a fairly infrequent basis and that the routine, conservative treatment given was generally successful in controlling her claimed symptoms. *See Moore v. Astrue*, 572 F.3d 520, 525 (8th Cir. 2009) (conservative treatment during period of alleged disability inconsistent with complaints of disabling symptoms); *Ostronski v. Chater*, 94 F.3d 413, 419 (8th Cir. 1996) (infrequent medical treatment during relevant period suggest that symptoms not so great as to preclude the performance

of work); *Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995) (impairments that are controllable or amenable to treatment do not support a finding of disability).

The ALJ also noted the record to show that plaintiff was not fully compliant in taking her medications. A claimant's non-compliance with prescribed treatment is a basis upon which to find her subjective complaints not credible. *Wildman,* 596 F.3d at 968-69; *Brown v. Barnhart*, 390 F.3d 535, 542 (8th Cir. 2004). To the extent financial difficulties may have contributed to such non-compliance, the undersigned notes that upon reporting such difficulties to her treating physician, plaintiff was provided all of her medication at no cost. There is no evidence that plaintiff was ever denied medical treatment due to financial reasons. *See Goff*, 421 F.3d at 793.

The ALJ also noted plaintiff's work history prior to her alleged disability to be sporadic, questioning whether her continuing unemployment was on account of medical impairments. *See Pearsall*, 274 F.3d at 1218 (lack of work history may indicate lack of motivation to work rather than lack of ability); *Woolf v. Shalala*, 3 F.3d 1210, 1214 (8th Cir. 1993) (claimant's credibility lessened by poor work history). The ALJ further noted the record to show inconsistent statements made by plaintiff to her health care providers regarding alcohol consumption. *See Ply v. Massanari*, 251 F.3d 777, 779 (8th Cir. 2001) (inconsistency in claimant's statements valid reason to discredit subjective complaints). Finally, the ALJ noted

plaintiff's reported daily activities of caring for her husband and son, cleaning, shopping in stores, doing all of the cooking, using public transportation, visiting with family every day, managing the family finances, and watching television not to be as limiting as would be expected with plaintiff's claims of disabling symptoms. *See Ponder v. Colvin*, 770 F.3d 1190, 1195-96 (8th Cir. 2014) (activity level which includes performing light housework, washing dishes, cooking for family, doing laundry, handling finances, shopping, watching television, driving vehicle, leaving house alone, attending church, and visiting with family undermines assertion of total disability).

These reasons to discount plaintiff's subjective complaints of disabling symptoms are supported by substantial evidence on the record as a whole.

A review of the ALJ's decision shows that, in a manner consistent with and as required by *Polaski*, the ALJ considered plaintiff's subjective complaints on the basis of the entire record and set out numerous inconsistencies that detracted from her credibility. The ALJ did not rely solely on the lack of objective medical evidence to find plaintiff's subjective complaints not credible. Because the ALJ's determination not to credit plaintiff's subjective complaints is supported by good reasons and substantial evidence, this Court must defer to the ALJ's credibility determination. *Goff,* 421 F.3d at 793; *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005); *Gulliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005).

A review of the ALJ's decision in its entirety shows him to have considered all of the credible, relevant evidence of record – including medical records, the observations of treating physicians and others, and the claimant's own description of her symptoms and limitations – and to have properly determined plaintiff's RFC, that is, the most she can do despite her physical or mental limitations.  *Goff,* 421 F.3d at 793; *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004); 20 C.F.R. § 416.945(a).  *Accord* Social Security Ruling 96-8p, 1996 WL 374184, at *7 (Soc. Sec. Admin. July 2, 1996).  Some medical evidence supports the RFC.  Based upon this RFC, the ALJ determined that plaintiff was unable to perform her past relevant work but, upon consideration of her age and other vocational factors, found plaintiff able to perform other work as it exists in significant numbers in the national economy and thus not disabled.  Because this finding was based upon the testimony of a vocational expert given in response to a hypothetical question that included those impairments and limitations properly found by the ALJ to be substantially supported by the record as a whole, the ALJ did not err in relying on this testimony to find plaintiff not disabled.  *Perkins v. Astrue*, 648 F.3d 892, 901-02 (8th Cir. 2011); *Buckner v. Astrue,* 646 F.3d 549, 560-61 (8th Cir. 2011).

Because the ALJ's determination of non-disability was based upon his proper evaluation and consideration of all the evidence of record, and his

determination is based upon substantial evidence on the record as a whole, the ALJ's conclusion that plaintiff was not disabled at any time since January 26, 2011, is affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is affirmed, and plaintiff's Complaint is dismissed with prejudice.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

Dated this 24th day of April, 2015.

___/s/ Nannette A. Baker_____
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE
